STATE, JOSEPHINE E. BROCKWAY AND FRANK S. BROCKWAY, PROSECUTORS, v. MICHAEL A. MULLIN.

An agent was authorized to manage a hotel, and without the knowledge of the principal entered into an arrangement with a livery stable keeper that the latter should furnish carriages for the guests of the house, and that the house would be responsible for the safe keeping and return of the carriages. *Held*, that the principal was not bound.

On error to the Newark District Court.

This writ brings up a judgment rendered in the First District Court of the city of Newark against the prosecutors in an action brought against them to recover damages resulting from the loss of a wagon, harness, whip and lap-robe, and for injuries to a horse, and the expenses of recovering possession of the horse, and in restoring him to a good condition.

The judge before whom the cause was tried found the following facts proven: that said Josephine E. Brockway, on the 15th of September, 1882, at the time of commencing said action, was the proprietress of the hotel in the city of Newark known as the Park House, which was managed by her husband as her general agent; that she never expressly authorized him to make any contract with Mullin, the plaintiff, a livery stable keeper in said city, about furnishing livery, or to make himself or her liable for the safety of the carriages and horses sent to the hotel; neither did she have any knowledge that the Park House was being charged for carriages and horses furnished her guests, but she admitted her husband had full authority to do everything necessary to manage and conduct said hotel; that, prior to said day, said Frank S. Brockway, while acting as her general manager of the hotel, made a verbal contract with said Mullin, by the terms of which the hire of all horses and carriages furnished by the latter to the guests of the Park House should be charged to the hotel, and the terms of which contract are found in the testimony of Mullin, and from which testimony the judge found that there was a contract of hiring and service between Mullin and Brockway, by which the latter, as agent of Mrs. Brockway, agreed to be responsible for the safe keeping of the bailments, and to pay for the use of them; that on said day a horse and wagon belonging to plaintiff, were brought to said hotel by the foreman of plaintiff's stables, named Clancey, in response to an order given through the telephone by Frank S. Brockway in person, in words following, to wit, "Can you send a team around for a man who wants to go to Waverly?" that said order was given immediately after the arrival at the hotel of the man who registered in the hotel register, "George Dempsey, Washington, N. J.,"

but whose real name is Mundy; that said horse and wagon were brought to the hotel by said foreman, where Clancey inquired of the clerk for whom the carriage was ordered, and was informed by that gentleman that Mr. Brockway was at breakfast, and that he (the clerk) would ask him; when the clerk returned, Clancey and Mundy were in conversation, and the clerk said to Clancey, "It is all right—this is the gentleman;" that said foreman left the hotel in company with said Mundy, got into the carriage with him, and rode with him as far as Mullin's stables, which were on the pretended route of Mundy, where the foreman got out of the carriage; that the foreman requested the privilege of so riding with Mundy; that thereupon said Mundy left the state with the outfit, no part of which has been recovered except the horse; that Mundy was arrested and tried on a charge of the larceny of said chattels, and is now serving a term in prison upon the conviction had upon the said charge.

Judgment was given for the plaintiff for the value of the articles stolen and wholly lost, and for the injuries to the horse, and the expenses incident to finding him and restoring him to health—which judgment was for $215.75 damages, besides costs.

Argued at February Term, 1884, before Justices REED and PARKER.

For the plaintiffs in *certiorari*, *R. Byington*.

For the defendant, *J. H. Meeker*.

The opinion of the court was delivered by

REED, J. The reason relied upon for the reversal of this judgment which I will first notice is that there is no evidence in the case from which the court could find that the contract set out in the finding of the court was entered into between the plaintiff and Frank S. Brockway. But while the testimony is not very clear, yet there was, in that of the plaintiff

detailing the conversation between himself and Frank S. Brockway relative to the furnishing of carriages to the guests of the hotel, from which the deduction might be drawn that such a contract was entered into.

The next reason, and the important reason, is that such a contract, if made, did not bind Mrs. Brockway, because it related to a matter which was outside of the agency with which she had invested her husband. The court found that the contract into which the husband entered with the plaintiff was that he, the husband, as the agent of Mrs. Brockway, would be responsible for the safe keeping of the bailments, and to pay for the use of them.

The authority of the husband was to manage her business of keeping a hotel. She never authorized specially, nor had she knowledge of the arrangement with the plaintiff into which her husband had entered.

To support the case of the plaintiff, which was against the wife as well as the husband, it is necessary to bring the contract of the husband within the scope of the general authority to bind her in matters appertaining to the management of the hotel business. No testimony was delivered upon the trial for the purpose of showing that the business of hotel keeping included supplying teams to guests, or, if so, upon what terms.

The court below must have held that it was a matter of judicial knowledge that the contract was made concerning a matter within range of the business in which the wife was engaged. Now the legal liability of a hotel keeper is to furnish lodging and food to guests and their accompanying horses. There is no legal liability to furnish horses or other means of locomotion. I am at a loss to find any ground for holding that this is within the occupation of the wife in this case.

It is said in the brief of plaintiffs' counsel that it is a matter of common knowledge that no well-regulated hotel could do business and accommodate the public without making some such arrangement as this, and that it is a well-known occurrence for a guest who wishes a horse and carriage to apply at the desk and an order is sent to the livery stable

keeper, who furnishes the equipment to a man he does not see, and so has no means of ascertaining his responsibility. He therefore says that a contract like the one found by the court is a natural and necessary one for the protection of the livery man. Suppose this be admitted and it be for the purposes of this argument assumed that this is such a familiar transaction that it rests within the cognizance of every one without proof of the fact, yet I do not think it makes in favor of the plaintiff's case. It only shows that the hotel, for the convenience of a guest, communicates with some one who furnishes the carriage. So, also, the communication is made with an express company or railroad company to take charge of a guest's luggage. So, in both instances, the charges are paid at the desk of the hotel for the guest and put in his bill. In neither is it known that the proprietor of the hotel assumes the character of an expressman or hirer of a vehicle, or any responsibility for the performance of the duties of either. And this usage, as claimed to exist within the knowledge of every one, makes the guest and not the hotel keeper the bailee. If this be so, then if the hiring in this case was, as is claimed, a hiring to the hotel keeper, it was not within the scope of his business, and so did not bind the principal. If it was a hiring to the guest, then the contract of the husband encounters a legal difficulty in the shape of the statute of frauds. It was a verbal contract to answer for the default or miscarriage of another. *Kirkham* v. *Marter*, 2 *Barn. & Ald.* 613 ; *Brown on Statute of Frauds*, § 155. Therefore, to recover at all, it was essential for the plaintiff to stand upon a usage for hotel keepers to hire horses to their guests. For it is perceived that if he was the bailee, the letting to the guest was a new bailment in which he was the bailor. If a part of the business of a hotel keeper is to let horses to his guests, and by reason of this the hotel proprietor is bound for a hiring of a horse for that purpose, with a contract extending the liability of the hirer to an absolute insurance, it is difficult to perceive the limit to the agent's authority in this direction. If he can hire, he can purchase. He can establish a stable

with an unlimited number of animals, and for their price and food and attendance, the proprietor, although ignorant of the act, will, by reason of the general authority to manage the business of the hotel given to the agent, become responsible. I think, as the case stands upon the record, with no proof that the transaction concerning which this contract was made was incident to the hotel business, and with the fact that the proprie- tress was ignorant of the transaction, there is nothing to sup- port the agent's authority to bind her by such an agreement. So far as appears, it was neither within the real authority nor the appearance of authority which she had conferred upon him.

Let the judgment, so far as it affects the defendant Josephine E. Brockway, be set aside.